UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| HOWARD McCAY, an individual,<br><br>          Plaintiff,<br><br>          v.<br><br>SEATTLE POLICE OFFICERS JEREMY BOHANNON, JOSHUA BRILLA, WALKER DICKSON, DORIAN KORIEO, AIMEE LACLAIRE, SCOTT LAPIERRE, GERARDO MORENO, BRENDAN SULLIVAN, and ROXANNE ZECH<br><br>          Defendants. | No.<br><br>COMPLAINT |

## I.   INTRODUCTION

1.1   On February 23, 2019, at approximately 5:30 p.m., a local precinct of the Seattle Police Department received a citizen phone call on the non-emergency phone line regarding the house located at 337 17th Avenue, Seattle, WA 98122. The caller stated it was "not an emergency, perhaps," but the doors of the home were open, which he found "weird" and "random." The caller reported that he lived at an intersection nearly a mile away and did not know the homeowner by name. The caller did not report having seen any unknown persons in or around the house nor having heard any sounds of distress. According to the caller, the only sound coming from the house was the sound of television upstairs. The caller did not indicate for how long the front door to the house had been open, and the call-taker did not ask.

COMPLAINT - 1

No.

18936.00000 nh041101

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1.2     Approximately one hour later, after nightfall, three Seattle Police Department officers responded to the home for a "house check." The home was surrounded by a tall wooden privacy fence that entirely obscured it from view from the sidewalk. Without any investigation or communication with the homeowner, the officers opened the gate of the privacy fence, pulled their firearms, and entered the home's front yard. Once inside the gate, they observed the front door to the house was open and an interior light was on. The officers walked to the open front door and peered inside the home. Perceiving that someone evidently lived there, one of the officers remarked, "I mean, I wonder if the door just flew open." The three officers did not knock, announce, or otherwise attempt to contact the homeowner while standing at the open front door for a number of minutes.

1.3     A few minutes later, a fourth officer arrived, carrying a long rifle. Still without attempting to contact the homeowner, the officers went over a plan to "blitz" into the home. Once the officers had agreed on a "blitz" plan, the officers twice pounded on the open door and yelled, "Seattle Police, conducting a building search! If you're in there, come out with your hands up!" Receiving no response, and without conducting any additional investigation or attempted communication, the four officers all pointed their firearms and entered the private home. Soon more officers joined them. Within approximately 20 minutes, a total of ten officers had entered the private home. Not one of them had a warrant or probable cause or other legal justification to enter.

1.4     As even the most basic records inquiry would have revealed, the owner and sole occupant of the home was Howard McCay, a 74-year-old retired longshoreman with no criminal record, who had owned and lived in the home for the past 48 years. At the time of the officers' arrival, Mr. McCay was asleep inside his home, in an upstairs bedroom, with the door closed and the television on. As he explained to a police sergeant later, Mr. McCay has hearing loss and suffers from tinnitus, and often leaves the television or radio on to drown out the ringing in his ears.

COMPLAINT - 2

No.

18936.00000 nh041101

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1.5     Startled awake by the commotion of the officers' storming into his home, Mr. McCay himself called 911 to report possible intruders in his home—intruders who were claiming to be the police. Fearful and alarmed, he asked the 911 operator to verify whether the people inside his home were in fact police officers. After checking, the 911 operator confirmed police were in his home conducting a "house check" and asked if he would cooperate; Mr. McCay responded immediately, "Sure, of course I will." He then added, "Can you tell them to put their guns away and not be so threatening?" The 911 operator told him that was not possible.

1.6     The 911 operator relayed the information about the homeowner phone call to the officers through dispatch. The officers, who had by then completed a protective sweep of the first floor and were now climbing the stairs to the second floor, were told the homeowner was inside the home and on the phone with 911. One of the officers instructed dispatch to tell the homeowner to come out of the bedroom with his hands up. All four officers pointed their guns at the closed bedroom door and waited. Seconds later, Mr. McCay, elderly and white-haired, emerged from the bedroom, alone, holding his cell phone in his hand. He said, "I'm on the telephone with the Seattle police."

1.7     Without requesting to verify Mr. McCay's name, identity, or residency in the home, the officers, still with their guns trained on him, directed Mr. McCay to show his hands, step forward, spin around, and lift up the back of his shirt; Mr. McCay complied. They then commanded him to "Get down on your knees." Mr. McCay complied. The officers then commanded him to "put your hands behind your head, and spin and face away from me." Mr. McCay complied. As he turned, Mr. McCay asked in bewilderment, "What did I do?" The officers declined to inform him of the reason for their intrusion into his home.

1.8     Once Mr. McCay was on his knees, with his hands up, facing away from them, the officers moved in on him. They first grabbed his left arm; Mr. McCay did not resist them and remained calm. The officers then grabbed both of his arms and began wrenching them backward. At this, Mr. McCay yelped in pain. He cried, "Please! I'm an old man! I have shoulder

COMPLAINT - 3

No.

18936.00000 nh041101

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

problems!" He begged them to "please stop." Instead, the officers yelled at him to "Relax!" and kept pulling at his arms.

1.9     Mr. McCay, still on his knees, was then pushed further forward, so his face was nearly on the floor. Pushed off-balance, Mr. McCay then fell over and flipped onto his side. The officers rolled him onto his stomach, face-down on the floor, and continued to yank at his arms. The officers finally forced his arms together behind his back and snapped them into handcuffs; Mr. McCay let out a piercing scream. The officers then left Mr. McCay lying face-down on the floor, with his hands handcuffed behind him, for several minutes.

1.10    Lying immobilized on the floor, Mr. McCay continued to cry out in pain, "I have shoulder problems. You're hurting me. It hurts." The officers ignored his complaints and told him to just "calm down." Mr. McCay exclaimed, "I'm so sorry. I can't calm down; it hurts too much."

1.11    One of the officers then asked Mr. McCay, "Were you here by yourself?" Mr. McCay responded, "As far as I know." The officer then asked if he had any weapons or anything that could "poke us or stick us"; Mr. McCay responded, "No, sir." After another few moments, the officer asked, "Do you live here?" Mr. McCay responded, "This is my house. . . . I've lived here for 48 years." Mr. McCay then twice confirmed that he was "the owner of the home."

1.12    Nonetheless, the officers continued to leave Mr. McCay face down on the floor, handcuffed. Mr. McCay again cried out, "It hurts, I can't take this position, please, please release me. . . . Please release me. I'm in so much pain." One of the officers responded, "Well you gotta let us figure out what's going on first."

1.13    Once three more back-up officers arrived, the officers told Mr. McCay they needed him to "stand up for us." They moved Mr. McCay's feet onto the stairs into a deep bend and commanded him to stand up. Mr. McCay partially stood up, but his knees began to buckle. Mr. McCay pleaded for the officers to "hold me so I don't fall!" The officers refused, and one said, "I'm not going to hold you. . . . Stand up on your own!" Mr. McCay cried, "I'm going to fall!" The officer again refused to support him and said, "If you fall it's on you."

COMPLAINT - 4

No.

18936.00000 nh041101

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1.14   Mr. McCay's legs buckled, and he fell down and slid down several stairs. Mr. McCay then lay there on the stairs, helpless and crying, as one officer stepped over him to climb to the second floor, while another yelled at him to "Use your legs!"

1.15   Two more backup officers arrived and joined the other officers on the landing. One of the officers grabbed Mr. McCay by the arm and lifted him partially into the air; Mr. McCay's body slid down two more stairs, as Mr. McCay again cried out in pain. Finally, one of the officers picked Mr. McCay up from behind, and supported him down the stairs and outside to the porch.

1.16   Out on the porch, Mr. McCay was kept handcuffed. Mr. McCay again identified himself and informed the officers he lived in and owned the home. He then helped direct the officers to retrieve his identification from his wallet in his pants pocket—which indeed reflected his address as 337 17th Avenue, Seattle, WA 98122. Eventually, after the entire house had been checked and cleared, and Mr. McCay's identification card had been handed around to numerous officers, one of the officers released Mr. McCay from the handcuffs.

1.17   In total, despite being readily identifiable as the elderly homeowner at all times, and despite his continually complaining of intense pain from the force, Mr. McCay had remained forcefully and painfully detained in his own home for nearly a quarter of an hour.

1.18   Plaintiff Howard McCay brings this action seeking damages caused by the Officers' violations of his civil and constitutional rights. The Officers violated Mr. McCay's clearly established Fourth Amendment right to be free from unreasonable searches and seizures when they entered and searched his home without a warrant or other legal justification, and handcuffed and detained him inside his home, causing him immense physical and emotional pain and distress.

## II.   PARTIES

2.1   Plaintiff Howard McCay is a citizen of the state of Washington and a resident of King County and Seattle, Washington.

COMPLAINT - 5

No.

18936.00000 nh041101

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

2.2     Defendant Jeremy Bohannon was, at all material times, a peace officer employed by the Seattle Police Department, acting under color of law.

2.3     Defendant Joshua Brilla was, at all material times, a peace officer employed by the Seattle Police Department, acting under color of law.

2.4     Defendant Walker Dickson was, at all material times, a peace officer employed by the Seattle Police Department, acting under color of law.

2.5     Defendant Dorian Korieo was, at all material times, a peace officer employed by the Seattle Police Department, acting under color of law.

2.6     Defendant Aimee Laclaire was, at all material times, a peace officer employed by the Seattle Police Department, acting under color of law.

2.7     Defendant Scott Lapierre was, at all material times, a peace officer employed by the Seattle Police Department, acting under color of law.

2.8     Defendant Gerardo Moreno was, at all material times, a peace officer employed by the Seattle Police Department, acting under color of law.

2.9     Defendant Brendan Sullivan was, at all material times, a peace officer employed by the Seattle Police Department, acting under color of law.

2.10    Defendant Roxanne Zech was, at all material times, a peace officer employed by the Seattle Police Department, acting under color of law.

### III.    JURISDICTION AND VENUE

3.1     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 1983.

3.2     Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C. § 1391 because at least some of the Defendants reside in this judicial district and because the events and omissions giving rise to the claims alleged here occurred within the Western District of Washington.

### IV.    FACTUAL ALLEGATIONS

COMPLAINT - 6
No.
18936.00000 nh041101

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

4.1     On February 23, 2019, at approximately 5:30 p.m., the East Precinct of the Seattle Police Department received a phone call from a man who identified himself as Mario Beaver. The call was recorded as being received from "Telephone Other, Not 911." Mr. Beaver started the call by saying, "It's not an emergency, perhaps, but my neighbor's house, um, is in a weird state. Like the doors are all open. And it's kind of random. And it looks like someone may have torn through the house."

4.2     The call-taker asked Mr. Beaver for the address of the house twice. Mr. Beaver initially said he did not know the street name. He eventually provided the address as 337 17th Avenue. Although he had referred to the house as his "neighbor's," he later indicated that he actually lived nearly a mile away, on 26th Avenue and East Fir Street.

4.3     Mr. Beaver reported that he had gone into the home and "did a general walk through," although he "didn't want to take anything or anything." He again reported that "all the doors are open," and "the windows are open," and it "looks like somebody may have broken in."

4.4     The call-taker asked when he had last seen the occupants, and Mr. Beaver stated it had been "maybe a few days." When asked whether he had seen anything or heard any noises from the house, Mr. Beaver reported only the sound of a TV "blaring" from a closed door upstairs. Mr. Beaver was asked whether the neighbors had any weapons, and Mr. Beaver reported "I don't believe so."

4.5     The call was logged in the police database as "Open – Building, Door, Etc." Police dispatch requested an officer respond to "check[]for house with doors and windows all open, inside contents appear to have been rummaged through. RP has not seen residents in a few days, only heard TV noise coming from upstairs. No w[ea]p[o]ns."

4.6     Approximately one hour later, at approximately 6:22 p.m., three Seattle Police Department officers responded to the home. Officer Dickson was deemed the "primary" officer; Officers Bohannon and Brilla were supporting. Each officer's body-worn camera ("bodycam") was activated and recording.

COMPLAINT - 7

No.

18936.00000 nh041101

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

4.7     Upon arrival at the address, the officers saw that the home was surrounded by a tall wooden privacy fence that entirely obscured it from view from the sidewalk. The officers opened the gate of the privacy fence, pulled their firearms, and entered the home's front yard.

4.8     Once inside the gate, they observed the front door to the house was open and an interior light was on. All three officers walked up to the porch and stood just outside the open doorway. The officers did not knock, announce their presence, or otherwise attempt to contact the homeowner at this time.

4.9     Officer Brilla used his flashlight to scan the outside of the house and reported that none of the windows appeared to be open. Officers Dickson and Bohannon looked inside the house onto the first floor. The officers could see a front entryway, stairs to the right, doors to the left, and a kitchen straight back. The kitchen light was on. Officer Dickson noted that there was large pack of fruit juice bottles on the kitchen counter, "like a Costco variety pack," and remarked, "I mean, I wonder if the door just flew open."

4.10    A fourth Seattle Police Officer, Officer Korieo, arrived to provide additional back-up. Officer Korieo was holding a long rifle that he pointed into the house. The officers then developed a plan for them to "blitz in" to the house.

4.11    Once the "blitz" plan was set, Officer Bohannon knocked on the open door and shouted "Seattle Police Department conducting a building search! If you're in there, come out with your hands up! Make yourself known!" After approximately 10 seconds, Officer Bohannon knocked again and repeated the verbal alert. According to the bodycam footage, the officers did not receive a response to either knock and announce.

4.12    Approximately 50 seconds after the first knock, all four officers burst into the house with their guns drawn, shouting, "Seattle police, get down!" The officers then proceeded to search and "clear" all rooms and doors on the first floor.

4.13    After finishing their check of the first floor, the officers converged at the bottom of the stairs and began climbing to the second floor. Officer Brilla shouted, "Seattle Police!

COMPLAINT - 8

No.

18936.00000 nh041101

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

Coming upstairs!" The officers reached the landing where the stairs turned to the left, and observed a closed door at the top of the second floor.

4.14    Meanwhile, the resident and owner of the home, Howard McCay, a 74-year-old retired longshoreman who had been asleep in the upstairs bedroom with the television on, heard the commotion downstairs and called 911. Mr. McCay provided his address, and explained he was having a "home invasion." He said, "There is a person yelling at my door, 'Come out with your hands up!'" Mr. McCay explained he didn't know who they were and was afraid to go downstairs. He asked the 911 operator, "Can you verify that you sent somebody for me?" The 911 operator checked, and then responded "Yeah so we do have police at the house right now. So if you're able to cooperate with them, please do. . . . Are you going to cooperate with them?" Mr. McCay responded, "Sure, of course I will. Can you tell them to put their guns away, and not be so threatening?" The 911 operator responded, "So they're there conducting a house check, so I can't ask them to put their weapons away. If you can step out with your hands up, so they can see them . . . ." Mr. McCay responded, "OK. I hope they don't shoot me." The 911 operator responded, "So long as you just cooperate with the officers you'll be fine."

4.15    As the officers were approaching the second floor, suddenly Officer Dickson yelled, "Hey stop stop stop stop stop." Officer Dickson was then informed by dispatch that they had "got [the] subj[ect] on the line,[] says someone is inside telling him to come down w[ith ]his hands up," and "he wants to confirm it is police before he comes down." Officer Dickson responded, "Copy that. Can you have that individual step out of the door with his hands up, so we can see him." Officer Dickson then said to other officers: "Yep somebody's in here." All four of the officers, still huddled together on the stairs, then pointed their guns at the closed bedroom door and waited.

4.16    Seconds later, dispatch reported, "Subj[ect] is stepping out." The door opened, and Mr. McCay, an elderly-looking man with white hair, who stands about 5'8" tall and weighs approximately 140 pounds, emerged from the bedroom, alone, holding his illuminated cell phone

COMPLAINT - 9

No.

18936.00000 nh041101

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

in his hand. The officers trained their guns on him and shouted, "Show us your hands!" Mr. McCay held up his hands and said, "I am on the telephone with the Seattle Police."

4.17   Officer Dickson instructed him to "come this way toward my voice." Mr. McCay complied and slowly moved toward the stairs. The officers then said, "Stop, stop." Mr. McCay complied and stopped. Officer Dickson then said, "Spin around for me." Mr. McCay complied and turned in a full circle. Officer Dickson then instructed him to "Lift up the back of your shirt when you're facing away from me." Mr. McCay complied and turned and lifted up the back of his shirt. Officer Dickson then directed Mr. McCay to "Get down on your knees real fast." Mr. McCay complied and lowered himself to his knees. Officer Dickson then told him, "Get down on the ground, put your hands behind your head, and spin and face away from me." Mr. McCay complied, put his hands behind his head, and slowly shuffled a quarter-turn on his knees. While turning, Mr. McCay asked in bewilderment, "What did I do?" Officer Dickson replied, "I'll explain it to you in just a moment." The officers did not explain why they were in the house, nor did they seek to verify Mr. McCay's name, residence, or purpose in the house.

4.18   Officer Brilla pulled a pair of handcuffs from his vest, and he and Officer Bohannon climbed up the remaining stairs to where Mr. McCay was kneeling. Officer Bohannon initially took Mr. McCay's left arm. Mr. McCay did not resist and remained calm. Officer Bohannon then handed Mr. McCay's left arm to Officer Brilla and moved to grab Mr. McCay's right arm. As the two officers began wrenching Mr. McCay's arms behind his back, Mr. McCay yelped in pain. Officer Brilla yelled, "Don't stiffen up!" Mr. McCay cried, "Please! I'm an old man! I have shoulder problems!" Officer Brilla responded, "Well thank you for telling us, but you gotta give us a second to get there." Officer Brilla kept pulling, and said, "Sir, relax!" Mr. McCay cried, "I'm sorry. I can't do it. It hurts too much! Please leave me alone." Officer Brilla responded, "No we're not going to leave you alone."

4.19   The officers then pushed Mr. McCay, still on his knees, further forward, so his face was nearly on the floor, and again tugged at his arms. Mr. McCay lost his balance and fell forward, flipped onto his back, and curled up into the fetal position. Mr. McCay cried, "You're

COMPLAINT - 10

No.

18936.00000 nh041101

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

hurting me! . . . It hurts so much!" The officers told him to "Calm down." Officers Brilla and Bohannon then rolled Mr. McCay onto his stomach, face down on the floor, and continued to wrench his arms behind him. Officer Brilla said, "Give me your other arm, sir." Mr. McCay cried, "I can't; it hurts too much." Mr. McCay then let out a piercing scream as the officers forced his arms together and snapped them into handcuffs.

4.20   The officers then left Mr. McCay lying face-down on the floor, with his hands handcuffed behind him, for several minutes. As he lay immobilized on the floor, Mr. McCay continued to cry out in pain, "I have shoulder problems. You're hurting me. It hurts!" The officers ignored his complaints and told him to just "calm down." Mr. McCay exclaimed, "I'm so sorry. I can't calm down; it hurts too much."

4.21   After another few moments, Officer Brilla asked, "Is anybody else here with you?" Mr. McCay responded, "I don't know who else is here." Officer Brilla asked, "Were you here by yourself?" Mr. McCay replied, "As far as I know." Mr. McCay continued to cry, "Please, please leave me. You're hurting me too much. I'm an old weak man. I have shoulder problems. You're hurting me. It hurts." The officers again ignored Mr. McCay's cries. Officer Brilla asked whether he had anything on him "that would poke us or stick us? Any weapons or anything?" Mr. McCay replied "No, sir," and then asked "What did I do? Why are you hassling me?"

4.22   Finally, Officer Brilla asked, "Do you live here?" Mr. McCay replied, "This is my house. . . . I've lived here for 48 years." Officer Brilla asked, "You're the owner of the home?" Mr. McCay confirmed, "I am the owner." Officer Brilla confirmed once again, "You're the owner of the home?" Mr. McCay responded, "Yes, sir." Officer Brilla did not ask any additional follow-up questions nor did he ask for identification to confirm he lived at the house.

4.23   Officers Brilla and Dickson then asked Mr. McCay why he hadn't come downstairs when they first announced themselves. Mr. McCay said, "I was scared" and "I don't know who you are." The officers shouted, "We announced 'Seattle police'!" Mr. McCay said, "Anyone can say that," and "You haven't shown me your IDs or anything. I don't even know who you are."

COMPLAINT - 11

No.

18936.00000 nh041101

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

4.24    Mr. McCay again pleaded with them to leave him alone, and cried "Please, you're hurting my shoulders. . . . It hurts, I can't take this position, please, please release me. . . . I'm in so much pain." Officer Brilla responded, "You gotta let us figure out what's going on first."

4.25    Officer Brilla confirmed with Mr. McCay that no one else lived at the house and that he was there alone. Again, Mr. McCay pleaded with the officers, "Please release me. My shoulders are hurting too much." Officer Brilla said, "Sir, as soon as we can identify you and figure out what's happening, what's going on here in this house . . ." and "We have to . . . finish checking your house."

4.26    Three additional Seattle Police Officers, Aimee Laclaire, Scott Lapierre, and Roxanne Zech, then arrived and entered Mr. McCay's home. Each of their bodycams was activated and recording. They came up the stairs to the landing to join the other officers. Officer Brilla then told Mr. McCay they needed him to "stand up for us." Mr. McCay said "Please don't move me, it hurts too much! If you would release me, I could move myself!" Officer Brilla said, "We can't release you, sir."

4.27    The officers again told Mr. McCay they needed to "get him up," and Mr. McCay responded, "Lift me if you must." Officer Lapierre shouted (in his first words to Mr. McCay), "No, you need to get yourself up!" The officers then moved Mr. McCay's feet onto the steps, and Officer Brilla pushed him forward to a sitting position, with his legs in a deep bend. Mr. McCay partially stood up, but his knees began to buckle. Mr. McCay pleaded for the officers to "hold me so I don't fall!" Officer Lapierre refused, and shouted, "Stand up! I'm not going to hold you, stand up!" Mr. McCay cried out, "I'm going to fall!" Officer Lapierre shouted, "Stand up on your own! If you fall, it's on you."

4.28    Deprived of any support or the ability to use his arms, Mr. McCay's legs buckled, and he fell backward onto the stairs, and then slid down several stairs, crying out in pain. Mr. McCay then lay there on the stairs, helpless and crying, as Officer Zech stepped over him to climb to the second floor, and Officer Lapierre yelled at him "You're doing this to yourself. Use your legs!"

COMPLAINT - 12

No.

18936.00000 nh041101

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

4.29 Two more Seattle Police Officers, Gerardo Moreno and Brendan Sullivan, then arrived and also entered Mr. McCay's home. Each of their bodycams was activated and recording. They came up the stairs to where Mr. McCay was lying and crying out in pain. Officer Sullivan then told Mr. McCay to "get up," and grabbed him by the arm and lifted him partially into the air. Mr. McCay's body slid down two more stairs. Officer Lapierre then also stepped over Mr. McCay's body and went up to the second floor.

4.30 Officer Sullivan then said, "Listen to what I'm saying. You're going to stand up, and we're going to walk outside the house. But you got to get up first." Mr. McCay said it would be "so much easier if you could just release me so I could walk." Officer Sullivan yelled, "Dude, knock it off and get up." Finally, Officer Sullivan went around behind Mr. McCay and picked him up from behind. He then supported him from behind and helped Mr. McCay walk down the stairs. Mr. McCay said, "Thank you for holding me so I don't fall. I don't have balance. I hang onto the railing when I go downstairs." Officer Sullivan said, "Do you live here?" Mr. McCay responded, "Yes, it's my home, I've lived here for 48 years."

4.31 Officers Sullivan and Moreno took Mr. McCay out onto his front porch. Mr. McCay was kept handcuffed. Mr. McCay again identified himself and informed the officers he lived in and owned the home. He then helped direct the officers to retrieve his identification from his wallet in his pants pocket. Officer Moreno pulled Mr. McCay's Washington State driver's license out of his wallet; the driver's license listed his address as 337 17th Avenue, Seattle, WA 98122. This was the first time any officer had requested or looked at Mr. McCay's identification.

4.32 Officer Moreno handed the driver's license to Officer Sullivan, who looked at it and then handed it to Officer Dickson, who had come to the front door. Officer Dickson read the name aloud, "Howard McCay." Officer Brilla asked, "Does he live here?" Officer Dickson looked at the license and replied, "Yeah, that's the address on his DOL." Officer Dickson then called in the license over his radio.

COMPLAINT - 13

No.

18936.00000 nh041101

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

4.33    Eventually, Officer Brilla came back out to the porch and removed the handcuffs from Mr. McCay's arms. In total, Mr. McCay had been physically seized and forcefully detained for nearly 13 minutes.

4.34    The officers continued to linger inside Mr. McCay's home and on his porch. While still inside the home, Officer Dickson relayed his perspective on the circumstances of their entry to some fellow officers, "The doors are wide ass open. There's stuff, you can clearly see, there's junk everywhere in here. . . . If there's an open door, I'm going to take an open door. Especially when the neighbor says it looks like it's been ransacked; and then we show up here, it looks like it's been ransacked. It looks like someone came in here, and was like, what do I need, what do I not need."

4.35    Later, Officer Dickson came out to the porch where Mr. McCay was standing. Officer Dickson asked Mr. McCay for his phone number. Mr. McCay supplied it, and then said, "If you ever come again, would you just call me?" Officer Dickson told him, "When I'm looking in a house that I can see looks like it potentially might be ransacked, but it also looks like somebody is still living here, I'm concerned, I'm concerned there might be somebody that's injured in here, I'm concerned there might be hostage situation, there might be somebody that shouldn't be here. So I'm going to take it seriously. So I'm going to enter this residence, knock and announce, announce my authority, announce who I am, every time."

4.36    Officer Dickson then told Mr. McCay it was "completely rude" of him to suggest he had not announced who he was. Mr. McCay responded that he had not claimed the officers did not announce they were police—only that he did not know who they were. Mr. McCay explained, "I did not say that. . . . I said I didn't know who you were. It doesn't mean that you didn't announce yourself. I said I didn't know who you were. Anyone could say that. . . . Anybody could say they're police." Officer Dickson retorted, "Well anybody can leave their door open! Look at this, your door is wide open, your back door is wide open, your other back door is wide open. I'm concerned there there's somebody that might be injured in here."

COMPLAINT - 14

No.

18936.00000 nh041101

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

4.37   Sergeant M. Lynne Woollum also responded to the scene as the "screening sergeant," to document the use of force. Sergeant Woollum spoke with Officers Dickson and Korieo on the front sidewalk, and then spoke with Mr. McCay on the front porch and asked him whether Officer Brilla's explanation of their actions made sense. Mr. McCay said he understood their point of view but did not appreciate their actions. Sergeant Woollum asked what else the officers could have done under the circumstances. Mr. McCay explained that the officers could have been more gentle after learning about his shoulder injuries, especially since the officers were four strong men and he was old and weak. Sergeant Woollum explained that "technically that's not how we do things," and that they put people in handcuffs for "everyone's safety." Mr. McCay explained that he disagreed with the policy. Sergeant Woollum then spoke with Officer Brilla to get his description of the use of force, and then entered the front entryway of the home and took photos of the front entryway and the front door.

4.38   Sergeant Woollum made a follow-up visit to Mr. McCay's home a few days later to inquire about his injuries. While meeting with him, she asked Mr. McCay to turn down the radio so she could hear better. Mr. McCay turned it down and apologized for not noticing it. He explained he has hearing loss and suffers from tinnitus, and he often leaves the television or radio on to drown out the ringing sound in his ears.

4.39   The Defendants entered and searched Mr. McCay's fenced yard and home without a search warrant or consent from Mr. McCay.

4.40   Defendants' warrantless entry into Mr. McCay's fenced yard and home was not justified by any exigent circumstances.

4.41   The Defendants lacked probable cause to enter and search the fenced yard or the home.

4.42   The Defendants lacked probable cause to seize Mr. McCay or to believe that Mr. McCay was engaged in criminal activity of any kind.

4.43   The Defendants lacked an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm.

COMPLAINT - 15

No.

18936.00000 nh041101

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

4.44 The manner and scope of Defendants' entry and subsequent search and seizure were additionally unreasonable under the circumstances.

4.45 Defendants caused Howard McCay physical injury and pain, and emotional distress and harm as a result of their unconstitutional conduct.

4.46 Officers Dickson, Korieo, Brilla, and Bohannon seized Mr. McCay when they pointed their guns at him and directed him to kneel on the ground with his hands behind his head.

4.47 Officers Brilla and Bohannon seized Mr. McCay when they pushed him to the ground and handcuffed him.

4.48 Officers Laclaire, Lapierre, Sullivan, and Moreno seized Mr. McCay when they grabbed him by force, while handcuffed.

4.49 At no point did Howard McCay pose a threat to the safety of the Defendants. From the moment Mr. McCay emerged from the bedroom, Mr. McCay complied with their instructions, did not resist or attempt to flee, was unarmed and visibly aged, did not make any verbal threats, and was not physically violent.

4.50 Despite Mr. McCay's repeated cries of pain in his shoulders, the officers forced Mr. McCay's arms behind his back into a single set of handcuffs, and kept him in handcuffs even after learning that Mr. McCay owned and lived in the home, and that, to his knowledge, no other individuals had intruded into his home. This use of force was unreasonable, unnecessary, and unconstitutional.

4.51 The Defendants violated Mr. McCay's clearly established constitutional rights when they entered and searched his home without a warrant, and handcuffed and detained him, in violation of the Fourth Amendment.

## V. CAUSES OF ACTION

5.1 By virtue of the facts set forth above, Defendants are liable for compensatory damages for deprivation of civil rights of Plaintiff Howard McCay guaranteed by the Fourth Amendment to the Constitution of the United States and 42 U.S.C. §1983, to be free from

COMPLAINT - 16
No.
18936.00000 nh041101

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

unreasonable search and seizure. Defendants are also liable for punitive damages for acting with malice, oppression, or reckless disregard for Plaintiff McCay's Fourth Amendment rights.

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests relief against Defendants as follows:

6.1   A declaration that Defendants' actions violated Plaintiff's civil rights;

6.2   Damages for physical harm and pain and suffering;

6.3   Damages for emotional distress and harm;

6.4   Punitive damages against the individual Defendants;

6.5   Pre-judgment and post-judgment interest on any amounts awarded;

6.6   Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

6.7   Other declaratory and injunctive relief as the Court deems just and equitable;

6.8   The right to conform the pleadings to the evidence presented.

DATED this 11th day of August, 2020.

MacDONALD HOAGUE & BAYLESS

By: /s/Joe Shaeffer
Joe Shaeffer, WSBA #33273
joe@mhb.com
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206) 622-1604

By: /s/Mika Rothman
Mika Rothman, WSBA #55870
mikar@mhb.com
705 Second Avenue, Suite 1500
Seattle, WA 98104
(206) 622-1604
Attorneys for Plaintiff

COMPLAINT - 17

No.

18936.00000 nh041101

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961